Next case of the morning is number 2211148, D&T Partners versus Baymark. Let me just put it in the way I understand this. Your clients were approached by these people. We want to buy your business. We're paying you $800 some thousand up front, right? Correct. We're giving you a $3.2 million promissory note. Then over a period of time, it's very clever. It's very smarmy. They manage to put the company in a position where it can't pay on the promissory note, but guess what? Their friend is involved as the lender, and so they end up with a bankrupt entity, but they still have access to the customer list, the business model, and the trade secrets. They put it in bankruptcy. They come out. They keep doing the same thing over and over again, so your clients don't have their business. Well, that's a very complex but single-purpose fraud. Now, what's the status of your state law lawsuit? We tried that, actually, in December. Now, all the parties are not the same. Do you have a judgment yet? We do not. We expect one. You tried that to the bench? We did. Interesting. Okay. I just wondered, because I understand it took four years to play out this scenario. I understand that you refer to all sorts of emails and sort of that, but those are not the basis for saying these people are racketeers. Well, Your Honor, we've also, to tack on to that, we've also alleged and demonstrated a fraudulent bankruptcy petition, which was part of this scheme. We've also, something I've never seen in a deposition, had the company representative interrupt and direct to shut the expletive up for a deponent, so there's obstruction of proceedings as well. And all of those coalesce and reinforce one another. They play out over a four-year period. If we are looking at closed-end continuity, we do not have to point to something that says this is a regular way of doing business or that indicates ongoing threat. The courts imply that threat from the continuity itself, and it has to be, the case law in this is, in this circuit is, there needs to be the relation and there needs to be a substantial period of time for closed-end continuity. I think most of us would take that to mean there has to be the threat of other victims, not just one victim. So, first of all, we've alleged 24 victims, including a bankruptcy. No, but that's not right. That's not the way you look at these things. Victims of exactly the same type of manipulation of the corporate enterprises. Well, I think these other creditors have been injured in the same way. They have debts. But it's all part of this global effort, right? I'll concede that. I mean, it all stems from the same effort. Yes, but Foyle did not think that was a pattern. And that's why I'm, you know, I'm well aware of the open versus closed and the this versus that and the four years. I mean, I've read all of this, but I'm trying to focus on pattern because that is what she based her decision on. That doesn't mean, of course, that we have to follow that. I'm just trying to understand it. And I'm still not totally clear on what your definition, if you will, of pattern is that is consistent with all the cases where clearly somebody did something wrong, but it didn't make RICO. So we've satisfied both open and closed continuity. Those are the definitions of continuity for purposes of establishing a pattern. The acts at issue, we have more than 100 acts that are related that played out over a four-year period. Had it been a six-month period, I wouldn't have such a leg to stand on. Had it been a year period, it wouldn't be clear. Four years is clearly the substantial period that's required. That is all that's required. Now, this court in Abrams, looking at the Supreme Court's decision in H.J. Hines, said, look, at this point, you can't turn the continuity prong into a heightened pleading standard, right? And so we've gone through. I mean, I'm very well aware of the general reticence of the courts to take on a civil RICO case. Hence the reason that . . . It's not a reticence to take on a civil RICO case. It is a reticence to transform RICO into a general-purpose fraud statute. For that, I would cite the court to the 2009 opinion, Supreme Court opinion in Boyle v. U.S. In that case, Your Honor, the court there said, We have repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to prescribe. There they looked at, and this goes back to the origin of this requirement, they looked at whether an enterprise existed. They looked at continuity in that context, and they said again, While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Your Honor, there are a couple of points that I'd like to make before I sit down. One is that on page 13 of the district court's opinion, the court states that RICO claims premised on mail or wire fraud must be particularly scrutinized. That is a level of scrutiny that this court has never prescribed. There is no citation to a Fifth Circuit precedent for the proposition, and I believe it is inconsistent with not only Iqbal Chwambly but also this court's admonition in Abrams, as I mentioned earlier, that courts cannot turn the continuity prong into a stringent pleading requirement. In any event, we also allege more than 40 other predicate acts that were not mail and wire fraud, and so the premise for that heightened level of scrutiny or review does not apply. Your Honor, RICO claims all require three common elements. There needs to be a person who engages in a pattern of racketeering activity that is connected to an enterprise. The district court found a lack of continuity as part of the pattern analysis, not a lack of continuity as part of the RICO enterprise analysis. The distinction is important. The cases that the defendants and the lower court rely on, they've all focused the analysis on the continuity element of the enterprise analysis. If we look, and I'll say all roads lead back to Delta trucking on this point. They've cited several cases, Delta trucking, Calcasieu Marine, N. Ray Brzezinski, and Word of Faith. Brzezinski cited solely to Delta truck, Calcio Marine cited solely to Delta truck, Word of Faith cited to Brzezinski, Calcio Marine, and Delta truck. Delta truck is from mid-1980s. It focused and ruled exclusively on the concept of continuity as it's incorporated into the enterprise element. Its analysis is on page 243 of that opinion. There were two grounds that the lower court had dismissed on. Failure to plead a pattern and failure to plead an enterprise. The Fifth Circuit actually assumed there was a sufficient pattern of racketeering activity in that case. So it did not find or hold there was a lack of a pattern or that there was a lack of a pattern because the acts were not, or were part and parcel of a single, discreet, lawful, commercial transaction. But the court went on to say the concept of continuity as a means of controlling the scope of RICO has also been incorporated into the enterprise analysis. And there it held that an association, in fact, must function as a continuing unit. And this is where we get this point of law or this dicta that's been lifted and used in other scenarios. But Delta trucking is limited to the enterprise element. Now, the next case, the Calcio Marine case, it again, this court addressed solely the concept of continuity in the context of the enterprise element. There it held that a RICO association, in fact, again, must be shown to have continuity. Found that the defendant did not, and it said that there was no such enterprise that could be found where the acts were based on part and parcel of a single, discreet, otherwise lawful, commercial transaction. The court did separately analyze the pattern analysis, but it did not cite Delta trucks or Delta trucking for the meaning or the scope of pattern, nor did it reference the single, discreet, commercial transaction language in its analysis of the pattern. But the court did make clear that a plaintiff adequately pleads its case if it pleads open or closed continuity. The next case, N. Ray Brzezinski, completely distinguishable. All of the alleged predicate acts took place as part of a single piece of litigation. The court there did analyze the pattern element, and it found that the plaintiff didn't adequately plead it, but that was because the litigation was over. There was one other case they cite, Bruno V. Starr. It's a one-paragraph opinion unpublished, and the next case and last case is word of faith, which I'll address on my rebuttal. Okay. Thank you, sir. The next one is Ms. Poe. And if you have anything to say in defense of your client on the facts, I appreciate you saying it. Your Honor. Because your brief didn't. Yes, Your Honor. In light of the 12B6 nature of the proceedings, you know, we can't attack the factual allegations. I would love to, you know, give you the whole story of our trial that we had in December and explain all of the facts that came out in that case, but that is not before the court. The actual facts pleaded by the plaintiff have to be presumed true at this stage. We did point out that a number of them actually are contradicted by their own exhibits, but rather than go into that at length, we focused on the legal issue, which is the pleading of pattern, which your honors have absolutely encapsulated that word of faith says, if you have a single otherwise lawful transaction, you don't even get to a closed versus open-ended analysis. You focus on the fact that this was a singular. So what would they need? I mean, I'm trying to understand. I've understood the term pattern in other contexts, but I'm trying to understand it in this case. So tell me what else in the 194 pages would they need to add that would get them past 12B6? So, Your Honor, if they had facts to support their conclusory and speculative allegation  it siphons all the assets away and leaves the creditors hanging, then they might be able to show continuity, but they don't have that. The pattern is if they just messed with them and that was it, they didn't mess with anyone else, that's not enough. But if they were doing this with everyone else, then that would be a pattern. Yes, Your Honor. Otherwise, every fraudulent transfer case would necessarily translate into RICO because you're going to hurt multiple creditors any time you have a fraudulent transfer if a company is completely looted of all its assets. And the nature of communication today is people are going to communicate by email, and that was what Judge Boyle was focusing on when she cited the authority about particular scrutiny when you're talking about mail and wire fraud. The fact that somebody may have sent 50 different emails over the course of a year isn't the point. And D&T— They sent that to a bunch of different groups. Correct. That might be the point. Correct. And several of the cases, you know, looking at Abraham, that is exactly the paradigm that would reflect a pattern. This was not one trip to India and one group of people tricked into coming for the promise of a visa that they didn't get. This was a repeated trip after trip after trip to India, bringing new victims along each time. And there was, again, as the Court stated in that case, nothing to suggest that the trips to India and the luring new unsuspecting victims would have stopped but for the litigation. Why was the bankruptcy dismissed? The bankruptcy was dismissed because there were no assets. They allege that that was because a new company was formed called Winspeed that took the assets and then Winspeed has transferred them to another company and that this business is still operating under a second or third guise. So the allegation that Winspeed has transferred assets to yet another entity was not before the trial court. That is a brand-new allegation that has been brought on appeal. You will see that there is absolutely nothing in the record below to suggest that. But it really doesn't matter, though, because the point is I just wonder, because you say it was a company with no assets, but clearly it had a serious fraudulent transfer case that could have been brought. Well, Your Honor, and that was disclosed in the bankruptcy filing, and I apologize that I do not have the ROA site at hand, but the bankruptcy petition and totality of the bankruptcy filing is one of the exhibits to the plaintiff's complaint. And in the section of that filing where ongoing litigation at the time of the bankruptcy filing is disclosed, this lawsuit was disclosed, and it wasn't described simply as suit on a note. It specifically was disclosed as fraudulent transfer. So if the trustee had thought there was some there there, the trustee could certainly have pursued that in the bankruptcy. The trustee made no such decision, and, again, I am certainly not. Who was the trustee? Oh, Your Honor, I'm sorry. I don't know the trustee's name. But, again, back to the bankruptcy issue, I'm certainly not an expert in bankruptcy. It's not what I practice, but my understanding is that when you have an entity bankrupt debtor and there are no assets, there's no reorganization, there is no discharge. Once everyone is satisfied that there are no assets, the bankruptcy is just dismissed. But that has no salience for this proceeding because this lawsuit then took back up. But there's— It's your basic point that this is for the state court to decide the fraud. It's not for us to decide the RICO. That's your argument. Absolutely, Your Honor, that this is your garden variety fraud-slash-fraudulent-transfer case. Both the Supreme Court and this Court have repeatedly stated that RICO is not supposed to become a substitute for every garden variety fraud or breach of contract or now-fraudulent-transfer case. What about the fact that this was going on for four years and involved quite a lot of this and that? Does that not help towards the pattern? So, Your Honor, again, when you're talking about the discrete transaction with a singular goal, word of faith dictates that you don't look at open versus closed-ended. But that brings me to—D&T continues to allege that they have pleaded over 100 predicate acts that lasted over four years, but they haven't, and we've established that in our brief, and they have never come back with any answers to any of the points that we have raised. First, they point to emails that are within Texas. That's not wire fraud. It has to be an interstate communication. No, it doesn't. It has to be a communication over interstate means of communication. Yes, but the Court has said that if you have a communication between one person in Texas to another person in Texas, that doesn't count. Well, how about if we take this? A, you fraudulently represent your good-faith investors, so you pay them some seed money. You execute this promise or not. B, you replace the fellow who was going to run the organization with your own stooge. C, you then contrive, and my memory is a little faulty here, about how they're going to not be able to— suddenly they can't repay that note. D, they've got a lender that's got an interest in the game, so the lender conveniently forecloses, taking all of the assets. Oh, yes, I forgot. They persuade the original pigeons to subordinate their loan to the fraudulent loan, so then they siphon the assets, as you said. Then they file a fraudulent bankruptcy. Then they interfere with discovery. I mean, gosh. So, Your Honor, I understand— If you put this on TV, it would be a very colorful— And it very well might be, but it wouldn't be a RICO case. And I would point to the fact that Section 1503, the obstruction of justice, only applies when the obstruction is in a federal proceeding, so there could have been innumerable state court shenanigans that D&T could have brought to the state court's attention, seeking sanctions, whatever, but that does not a federal RICO case make. And when you look— Can you respond to opposing counsel's argument that there have been a couple of dozen victims in this case? Well, Your Honor, again, anytime a company is looted of all its assets— and again, for purposes of this argument, I will take that allegation as true— there are going to be multiple creditors. Just like in Abraham, one trip over to India would have multiple victims. It's the next round of victims that starts making the pattern. There is no next round of victims here. Once the looting occurred, as the case out of the Second Circuit said, there's nothing left to loot. There's nothing left to do in this case, and nobody is going to get hurt more because of any obstruction of justice, because of any bankruptcy fraud, and that leads me to the Fifth Circuit authority about causation of RICO injury. The predicate acts have to directly cause the injury, and the bankruptcy fraud is not alleged to have caused any injury. The obstruction of justice, to the extent it actually did apply, which it doesn't because it's a state court proceeding, it has not alleged to have caused any injury. The injury was complete. The second ace at global had no more assets. And this court has recognized in other contexts, for example, the statute of limitations context, that the fact that a defendant has continued to hold assets that were taken wrongfully doesn't continue the injury. The injury has already occurred, and that is in Joseph B. Bach and Wasserman, LLC, 487 Federal Appendix 173, Fifth Circuit 2012. The continued illegal possession doesn't do anything that the original taking didn't do. There's no more harm. The second ace at global has no more assets. And by plaintiff's own admission, that was done by the latest October of 2018. So you're not talking about a four-year period. You're talking about a period leading up to October of 2018, and then you're talking about the cover-up. And I believe that although other circuits have articulated it as cover-up activities don't extend pattern, that is completely consistent with this court's analysis of the causation element, which is that the predicate acts have to cause harm. The cover-up acts don't cause the harm, and therefore they shouldn't extend the pattern. If there's nothing left to loot, you're done. And that is what is embodied in word of faith. And I will briefly address the issue of whether it's enterprise versus pattern. The Delta trucking case absolutely discussed it in terms of enterprise, and that was because at that point in time there was Fifth Circuit authority under the RAGS Couture case that said all you need for a RICO pattern is two predicate acts within 10 years. That's all you need for a pattern. That, as Calcasio-Marine acknowledged, that unique authority in the Fifth Circuit was thrown out after H.J. So the fact that in Delta trucking the court talked about it in the concept of enterprise because that's the only way they could talk about it doesn't mean that when it comes to word of faith and it's talked about in terms of pattern that the analysis doesn't apply. This was a single otherwise lawful transaction. There is nothing inherently unlawful about purchasing a company using debt to do so, and there's nothing inherently unlawful about later a foreclosure proceeding in conjunction with that debt. This is not a situation of drug trafficking or human trafficking where the very nature of the transactions themselves are inherently illegal. This was an otherwise lawful transaction that the plaintiff says there's all these predicate acts related to it. And word of faith says that's not enough for a pattern. You have to have something else. And when you take it forward to Abraham and you contrast the fact pattern there with the fact pattern here where you had this constant churn of new activity harming new victims, you don't have that here. And the fact that there were multiple creditors, you know, it's interesting that the plaintiff wants to invoke those creditors' names now because it certainly didn't do so in the bankruptcy court when those same other victims would have shared in any recovery. But that is what it is. The district court recognized that if a case like this is RICO, every case is RICO. Yeah. But, I mean, I'm sort of surprised they didn't sue your law firm as well. Well, they did. They did. And, you know, the court, as we noted in our brief, did not reach the issues specifically raised by my firm and Julie Smith, one of the attorneys in my firm, because the court found that the pattern analysis killed this case across the board, but there were a number of specific defenses and issues raised by the attorney defendants. And, again, those are neither here nor there with respect to what's before the court today. What's before the court today is the pattern element, and they haven't pleaded it. No matter how long their complaint is and how many extraneous facts they allege, as the district court recognized, they went for volume over clarity because they didn't have facts. Well, I mean, all I have to say is they may have gone for – they went for volume with clarity. Whether it matches up to a RICO offense, I don't know. But from your client's standpoint, the silence about the facts here is just deafening, just deafening. Well, Your Honor, I apologize if you feel that way. Again, we felt that going into nitpicking the facts would be a distraction from the pattern analysis. But what I can say that is in the record, that this idea that the transaction closed and then the plaintiff was tricked into subordinating their debt is not borne out by the documents that they attach. Those documents reflect – the APA document reflects that the subordination was there from day one. It's in the APA. Without the subordination to the lender, there would have been no deal. So that is simply not borne out by their documents. All right. Thank you. Ms. Schumacher, I don't think you have much to say because they didn't really refer to your client in the briefs, right? I'm sorry. I didn't quite hear your question. I said your argument is that the D&T did not really refer to your client in the briefing. That's correct. In the opening briefing, there are not enough acts alleged against SG Credit or Mr. Cole to form a pattern. In the reply brief, there is a new theory of liability related to association in facts that's articulated. I'm happy to talk about that. In my limited time, I'd really like to impress upon the Court the limited role of Mr. Mark Cole and SG Credit. SG Credit – the allegation against SG Credit is that they assumed a contract from SuperG and then a board seat on Winspeed. Your basic argument is even if we reversed as to Baymark, you would still prevail. That's correct. There are several reasons why that's true. We're not part of the alleged enterprise. There are not facts sufficient to do that. The acts that are alleged against SG Credit and Mr. Cole did not proximately cause any injuries. The allegations in the live complaint suggest that at most maybe those acts delayed the lawsuit that was brought, and so there's no proximate cause there. And again, the individual acts alleged are insufficient. All SG Credit did was assume a contract from SuperG. Mr. Cole offered debt. The initial $1 million loan was real money. It was made while plaintiff's CEO, Mr. Dante, was CEO of the company. There are no allegations that that debt was unnecessary or that Mr. Cole knew that there would be anything problematic about the debt. Later on, when the plaintiffs were unable to pay the debt, there was a restructuring workout. Both parties were represented by separate law firms. There was an additional, you know, there was redlining of agreements. There are no facts alleged that that was anything other than an arm's-length transaction. Mr. Cole's company at the time, SuperG, paid an additional $200,000. The live pleading says the modus operandi here of the enterprise is that they acquire equity stakes for little or no value. They also allege that the value for the wind speed entity was $3.17 million. My clients paid a total of $1.2 million for a 40% stake in the company. The math there is it works out. We paid $1.27 million for a 40% stake in a company that's valued at $1.37 million. Are you talking about SuperG or— I'm talking about—so, yeah. So, SG Credit, extremely limited. I'm talking about SuperG. Obviously, Mr. Cole worked for SuperG. Is that your client— No. Right. That's what I thought. So, when you say your client paid, you're talking about— Mr. Mark Cole authorized, on behalf of SuperG, $1.2 million. Or he was involved in SuperG. Okay. Correct. All right. So, if there are no further questions, I would cede the remainder of my time back to the Court and ask that you reverse as to SG Credit and Mr. Cole. Okay. Thank you. Reverse or affirm? Affirm. Okay. Mr. Freeman. Thank you, Your Honor. I want to start. I've never, outside of this, sued a law firm. I did not relish it. In fact, I hated it. But this is an exceptional case. Judge Jones, your question about why was the bankruptcy dismissed, they didn't fill out the forms that were required. They didn't prosecute it to the end, and it was dismissed by the Court. It was a bad faith filing. That's consistent with that, and it was terminated. They did come into the state court and argue, subsequently, that they had been discharged of everything, so there was nothing to see, nothing to do. You're kidding. Nope. They argued that, not just with a straight face, but vehemently. With respect to their argument about Section 1503 obstruction, only applying to federal cases, well, that discovery was relevant to the bankruptcy, but they also obstructed the bankruptcy proceedings, which are, by definition, federal. As for the state court, should this be a case for the state court, I'll point out that I have several defendants here who are outside of Texas, and that I truly believe this is not a garden variety type of fraud or case. I will candidly tell you, when I initially took this case on,  and at that point in time, I could not withstand heightened pleading standards. That was the reason I filed in state court initially, because I didn't have a single document. I knew this was wrong. It turns out my theory was very much on point, but I knew I couldn't substantiate it. I had to file in state court, conducted discovery, came to the conclusion that I can now substantiate and meet heightened federal pleading standards, so I brought this case. Had I not been thrown out in district court, probably would have dismissed the state case and pursued through this, but things work out as they do. With respect to the Joseph Bach case that was cited, that a defendant continues to hold the property so there's no cause for harm, this was an entire business operation, lock, stock, and barrel. This was everything. With respect to Super G and Mr. Cole, there absolutely are facts alleged here that this was not an arm's length transactions. In fact, the allegations that they acknowledge and recite are themselves standing alone sufficient. I've kind of set a really high standard here with 194 pages and 400 plus paragraphs, but really I just need a few. I don't need 100 predicate acts. Granted, I probably need more than two. I'm not saying that, but I'm saying we're getting into areas we don't need to get into if we distinguish between 20 predicate acts and 100. Also, they became owners in Winspeed, the entity that was formed by the CEO of Aset Global, who was also the CEO of Winspeed, and Mark Cole was the, quote, Super G board member. With respect to Word of Faith, in the spring of 1991, ABC started researching this news program. November 21 of the same year, they broadcast the report. July 9, 1992, they rebroadcast that report. The activities there at issue played out over six months. Now, if you count the rebroadcast, a little over 12 months. There's a host of cases that would indicate that's not sufficient for closed-ended continuity. Also, unlike our case, the plaintiff in Word of Faith did not allege that the acts at issue were a regular way of doing business. And the facts are distinguishable. The single lawful endeavor at issue in Word of Faith was the production of television reports concerning a particular subject. The allegations of D&T are centered on a fraudulent transfer of assets from one entity to another. It's not an otherwise lawful transaction. It was an inherently unlawful one. Here, they joined together to run a new organization, Winspeed, which carried out the transfer and provided continuity. Judge Haynes, I could see your face when I said that it was an inherently unlawful activity, and I want to address that. I first want to make the point that this standard that's being used, part and parcel of a single, discrete, otherwise lawful transaction, we've got to break each of those pieces down. These acts at issue were not all part and parcel of such a transaction. Instructing an opponent to shut up, fraudulent bankruptcy petition, acts by the owner of an entity to orchestrate a foreclosure of itself, papering a foreclosure that never happened. This was not a discrete event. This is what they do. They acquire businesses. It wasn't an inherently unlawful transaction. The acts at issue were all hallmarks of fraud. May I continue to explain that? No. Sorry. Thank you for your time, Your Honor. All right. Thank you, sir. All right. Court will stand and recess for about ten minutes. Thank you.